**In re Joshua Seth KASSOFF, Debtor.**

**THE MIDDLEFIELD BANKING COMPANY, Plaintiff,**

**v.**

**Joshua Seth KASSOFF, Defendant.**

**Bankruptcy No. B91–15017.**
**Adv. No. B91–1599.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

Oct. 22, 1992.

Paul A. Newman, Jonathan P. Blakely, Newman, Leary & Brice, Chardon, Ohio, for plaintiff.

Richard A. Baumgart, Dettelbach, Sicherman & Baumgart, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND DECISION

WILLIAM J. O'NEILL, Bankruptcy Judge.

Before the Court is the complaint of Middlefield Banking Co. (Middlefield) seeking determination of dischargeability and objecting to discharge pursuant to various subsections of Sections 523 and 727 of the United States Bankruptcy Code. Defendant–Debtor, Joshua Seth Kassoff, filed an answer and counterclaim. These matters are core proceedings within the jurisdiction of the Court. 28 U.S.C. §§ 1334, 157(a), (b)(2)(I), (J), (O) (1988), General Order No. 84 entered on July 16, 1984 by the United States Court for the Northern District of Ohio.

A trial of this proceeding was conducted, and on consideration of the evidence, pleadings and file, the Court finds:—

Defendant–Debtor, Kassoff, is a 30–year old high school drop out. He incorporated Double J. Mobile Home Service, Inc. (Double J), a mobile home transport business in approximately 1987. He was sole shareholder, president and a director of the corporation. (T. 16–20, 174). The corporate business was operated in Middlefield, Ohio in Geauga County. Its employees worked from that location and the phones were answered there. Personal property taxes were paid to the Geauga County taxing district at Geauga County rates. (EXH. 19, 20; T. 19, 30, 35–37, 176–179). Double J vehicles traveled throughout the state in pursuit of corporate business. (EXH. 2–5, 7, 9; T. 23, 179–180). Debtor resided in South Euclid, Ohio in Cuyahoga County.

His personal computer which he owned was kept at his residence and used to assist him in his business and for other purposes. (EXH. 18; T. 34, 182–183). At some point he directed the corporation's mail be sent to his personal residence because of problems receiving delivery at the Middlefield location. (T. 69–70, 177, 181–182). The corporation ceased doing business during the summer of 1991. Kassoff and his wife filed for bankruptcy relief on September 6, 1991. Double J did not file.

During the corporation's tenure its financing and banking were conducted with Plaintiff, Middlefield, from whom Kassoff also obtained personal loans. This relationship arose because the loan officer was a family friend. (T. 59, 169, 208). The initial start-up loan for the corporation was made due to this friendship and because Kassoff's parents co-signed the loan, not because of the financial soundness of either the corporation or Kassoff. This relationship served the corporation well because loans were extended during its existence despite its minimal value and marginal profitability. (EXH. E, F; T. 94–95, 100, 131–138, 141–145). Loans were extended in 1991 even after the bank cancelled the corporate and Kassoff's personal credit cards for delinquencies. (EXH. D; T. 131–133).

Eight loans were introduced into evidence, seven being business loans of the corporation. Kassoff co-signed six of the latter and his parents co-signed one. (EXH. 21, 22, 23, 26, 27, 29, 31; T. 41–43, 61–77). One loan was Kassoff's personal loan for home improvements. (EXH. 25). Four of the business loans provided for pledging collateral as security. All the loans are written on bank forms. A secured loan is distinguished from an unsecured by a check in a box marked "Security Agreement" and a description of collateral. To obtain the loans Kassoff indicated he needed money for a given purpose and length of time. Terms of the loans were never negotiated. The loan officer determined the rate of interest and whether the loan would be collateralized. (T. 199, 209). Many of these loans were re-writes of previous loans, some rewritten as often as four times. To rewrite a loan the Bank required no principal payments. It usually required that interest payments be brought current. (T. 61–76, 123–124, 144–145, 224–225). The Bank never made an ·effort to check its collateral. (T. 129, 211). All loan payments were current through May of 1991. (T. 105–106, 175).

Kassoff was a relatively unsophisticated businessman whose dealings with the Bank were familial and informal. It is apparent he did not fully understand the significance of security interests provided in untitled property. He understood the significance of a security interest in titled vehicles, however, as demonstrated by his cooperation with Middlefield and other creditors regarding this collateral. (T. 62–63, 93, 151–154, 198, 202–204). Middlefield, on the other hand, failed to notify Kassoff of certain sales of its collateral. (T. 151–154).

Specifically at issue are two of the secured loans to the corporation in 1991; # 552641 made on January 22, 1991 for $12,014.00 secured by a 5 point multi-directional system heavy duty-light weight mobile and modular setting systems, and # 552922 of April 28, 1991 for $20,920.64 secured by a radio system. (EXH. 27, 29). Middlefield filed U.C.C. financing statements listing this collateral in Cuyahoga County and with the State of Ohio. (EXH. 28, 30). Collateral securing these loans, or a portion thereof, was sold by the corporation in the summer of 1991. At this time, Kassoff sought legal counsel regarding bankruptcy and discussed the possibility of selling equipment. Legal counsel conducted a lien search in Geauga County based on Kassoff's representation the corporation was located in that county. Kassoff was advised there were no liens preventing disposal of the equipment. Collateral was sold in reliance on this legal advice. (EXH. C; T. 55–56, 108–113, 116–117, 185, 202–203).

Loan # 552641 was for the purchase of the modular system, a trailer hitch and some equipment for the corporation. (T. 41–44, 67–71). Some equipment purchased with the loan proceeds was sold to Sommers Mobile Leasing for $4,500.00. The

money from the sale was deposited in the corporate account and disbursed for corporate purposes. No receipt was obtained for this sale; however, the corporation's bank statements reflect the transaction. Fair market value of the equipment sold was approximately $5,000.00. Kassoff's testimony at his meeting of creditors reflected a purchase price of $5,000.00 for the sale, a minimal discrepancy. Also, there is a discrepancy in his explanation of the deposit of the sale proceeds. The discrepancies regarding disposing of collateral to Sommers Mobile Leasing were minimal and satisfactorily explained by Kassoff. (EXH. T; T. 41–50, 184–189, 197, 201, 212–217). The funds were initially deposited in the corporate account and disbursed to pay corporate debt.

Loan # 552922 is a re-write originally negotiated for the corporation in part to finance the purchase of a radio system which secures the loan. This loan was rewritten four times. (T. 51–53, 74–75). One of the radios in the system was apparently left in a truck when repossessed by Middlefield and subsequently sold. The other radios were given to J.S.L. Truck Service to reduce an outstanding bill. The radios were given to J.S.L. with the understanding they could be sold after Kassoff consulted with his attorney. They are still in J.S.L.'s possession. J.S.L. was owed $5,400.00 and the radios when transferred had an approximate value of $4,200.00. (T. 54–56, 114–121, 184–188).

Double J's business accounts were maintained at Middlefield which, therefore, had access to all its bank statements and cancelled checks. In addition, corporate payroll records and tax returns are available. (T. 156, 175–176). No disposition was made of any corporate records. Kassoff produced his personal financial records at a deposition conducted by Middlefield Bank in this case. There are no missing records. (T. 189).

The complaint asserts seven counts. Counts 1, 2 and 3 request determination of non-dischargeability pursuant to various subsections of Section 523 of the Bankruptcy Code. Count 1 was voluntarily dismissed after the first day of trial. (T. 164–168). Counts 4, 5, 6 and 7 object to discharge under various subsections of Section 727 of the Bankruptcy Code. Plaintiff has the burden of proof on these issues. See Fed.R.Bankr.P. 4005. The standard of proof is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

## DISCHARGEABILITY

Count 2 seeks determination that Loans # 552641 and # 552922 are non-dischargeable under Section 523(a)(4) which precludes discharge of a debt:—

"for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

11 U.S.C. § 523(a)(4) (1988)

The complaint alleges Kassoff committed fraud while acting in a fiduciary capacity, although Plaintiff's post-trial brief asserts embezzlement. Factually it is argued Kassoff failed to apply proceeds from sales of collateral to the two secured loans. The evidence fails to substantiate this count.

"Fiduciary capacity" under Section 523(a)(4) requires a technical or express trust. *Lewis v. Short,* 818 F.2d 693 (9th Cir.1987). There is no evidence of a fiduciary relationship herein. "Embezzlement" is defined as:—

"the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come, and it requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud."

*Driggs v. Black,* 787 F.2d 503 (10th Cir.1986)

Debtor's actions clearly do not satisfy this definition. Debtor unknowingly transferred equipment in which Middlefield had a security interest. These transfers were made on behalf of the corporation. A reasonable price was obtained for the equipment sold and proceeds were used entirely for corporate obligations. The transfer of additional equipment was made to cancel outstanding corporate debt. Most signifi-

cant is that the transfers were not completed until Debtor sought and obtained legal advice for their propriety. There is clearly no evidence to suggest a fraudulent appropriation by Debtor and this count must therefore be denied.

■ Count 3 alleges non-dischargeability of the same two loans under Section 523(a)(6) which precludes discharge of a debt:—

"for willful and malicious injury by the debtor to another entity or to the property of another entity."

11 U.S.C. § 523(a)(6) (1988)

Middlefield asserts the transfers of collateral on these loans in conscious disregard of its rights, constitutes conversion which precludes discharge. Kassoff argues he was an inexperienced businessman who relied on advice of counsel in these transfers. Also he maintains Middlefield filed its financing statements in the wrong county.

■ Section 523(a)(6) requires proof that a debt is based on conduct both willful and malicious. "Willful" is deliberate or intentional conduct which necessarily leads to injury. *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987) cert. den. 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987). Kassoff's sale of the collateral was intentional and willfulness is undisputed. "Malicious" is conduct in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm. *Perkins*, supra, *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986). The term does not encompass reckless conduct. *Wheeler.* Therefore, a claim based on a technical conversion without a conscious intent to violate the rights of another is dischargeable. *C.I.T. Financial Services v. Posta*, 866 F.2d 364 (10th Cir.1989).

The sale and transfer of equipment in which the Bank had a security interest were not malicious within the meaning of Section 523(a)(6). Kassoff was a young, relatively inexperienced businessman. His transactions with the Bank were informal. Loan terms were not negotiated, including provisions for security. In addition, loans were rewritten numerous times. The Bank did not check its collateral. Legal advice was sought prior to the transfers. A lien search was conducted and counsel advised Kassoff that sale of equipment was appropriate. It is patently clear there was no intent by Kassoff to violate Middlefield's rights in the collateral, nor was there a conscious disregard of his duties. There is, therefore, no evidence to find non-dischargeability under Section 523(a)(6). The parties' dispute regarding propriety of the Bank's U.C.C. filing in Cuyahoga County need not be decided. There is no dispute the Bank had a security interest in the equipment transferred regardless of the U.C.C. filing, and Kassoff's conduct was not malicious irrespective of whether the filing was proper.

## OBJECTIONS TO DISCHARGE

■ Count 4 objects to Debtor's discharge under Section 727(a)(2) which requires denial of discharge when—

"the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition ..."

11 U.S.C. § 727(a)(2) (1988)

Plaintiff maintains Debtor's transfer of Bank's collateral within three months of bankruptcy was with intent to hinder, delay and defraud the Bank. This count is without merit.

Section 727(a)(2) refers to transfers of a debtor's property. The evidence herein reflects the collateral was a corporate, not an individual, asset. More significant, however, is absence of evidence of intent to hinder, delay or defraud the Bank. The collateral was transferred in good faith. The Bank did not regularly check its collateral and there is no evidence Debtor attempted to conceal the transfers. He readily provided explanations of its disposition upon

inquiry by the Bank. There is no substantiation for denial of discharge under this subsection.

Count 5 objects to discharge under Section 727(a)(3) which requires denial of discharge when:—

"the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case ..."

11 U.S.C. § 727(a)(3) (1988)

This provision is intended to insure that the trustee and creditors have sufficient information to trace a debtor's financial history for a reasonable period past to present. *Cox v. Lansdowne,* 904 F.2d 1399 (9th Cir. 1990), *Chicago Title Insurance Co. v. Mart,* 87 B.R. 206 (Bankr.S.D.Fla.1988). This section makes "the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *In re Underhill,* 82 F.2d 258, 260 (2d Cir.1936). Adequacy of a debtor's records must be determined on a case by case basis taking into consideration debtor's occupation, financial structure, education, experience, sophistication and other relevant circumstances. *Chicago Title Insurance,* supra, *Seidle v. Escobar,* 53 B.R. 382 (Bankr. S.D.Fla.1985).

Middlefield's objection under Section 727(a)(3) focuses on Debtor's asserted failure to keep records of transfers of collateral under Loans # 552641 and # 552922. The evidence, however, reflects the collateral was corporation property and not the debtor's. Debtor maintained and produced records from which his personal financial condition and business transactions could be ascertained. In addition, Debtor's unchallenged testimony was that all corporate financial records were available and were produced at deposition. Mere absence of a written receipt for transfer to Sommers Mobile Leasing does not support objection to discharge. Requested relief under Section 727(a)(3) is, therefore, inappropriate.

Count 6 objects to discharge under Section 727(a)(4) which precludes discharge if:—

"the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs ..."

11 U.S.C. § 727(a)(4) (1988)

Specifically it is asserted Debtor made a false oath at his meeting of creditors regarding disposition of proceeds of sale of collateral. At that meeting he testified having received $5,000.00 for sale of equipment to Sommers Mobile Leasing. At trial, having reviewed financial records, he corrected this testimony and stated the sale price was actually $4,500.00. Further, his initial testimony that the money was deposited in his personal account was amended to indicate the funds were deposited in Double J's account. Some of the funds were then transferred to Kassoff's personal account to pay corporate debts. These minor discrepancies cited by Plaintiff do not provide a basis for denial of discharge under Section 727(a)(4). Debtor fully disclosed the transaction and testified, without corporate records, to the best of his ability. Any falsity in testimony at the meeting of creditors is clearly an honest mistake of fact. The evidence fails to support Middlefield's allegation that Kassoff's testimony was knowingly and fraudulently made.

Count 7 is premised on Section 727(a)(5) which provides for denial of discharge if:—

"the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss

of assets or deficiency of assets to meet the debtor's liabilities ..."

11 U.S.C. § 727(a)(5) (1988)

Middlefield alleges Kassoff received proceeds from sales of collateral as well as loan proceeds, and has not satisfactorily explained their disposition. This objection to discharge is without merit.

Count 7 is hazy in distinguishing between the corporation and Kassoff, the debtor. Middlefield cites no failure of the Debtor to explain his assets. In addition, there is no evidence of failure to satisfactorily explain the corporation's disposition of proceeds. To the contrary, testimony reflects all corporate records were available. The corporation was a start-up venture poorly capitalized that lost money. Corporate loans state the purposes for which they were made. There is no foundation for denying discharge under this subsection.

## CONCLUSION

The evidence herein fails to support Middlefield's asseveration of non-dischargeability or denial of discharge. Defendant–Debtor is entitled to judgment on the complaint. Consequently, Defendant–Debtor's defense of release for Plaintiff's failure to give notice of its disposition of certain collateral is moot.

## COUNTERCLAIM

Debtor requests judgment and an award of attorney fees pursuant to Section 523(d) of the Bankruptcy Code. Additionally, he asserts this litigation is vexatious and, therefore, he is entitled to attorney fees, costs and expenses pursuant to Bankruptcy Rule 9011 and 28 U.S.C. § 1927.

Section 523(d) provides,

"If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the

court shall not award such costs and fees if special circumstances would make the award unjust."

11 U.S.C. § 523(d) (1988)

Count I of the complaint which Plaintiff pursued until the second day of trial was premised on Section 523(a)(2). Middlefield asserted all or some of the loans in evidence were non-dischargeable because obtained by false pretenses and representations. The evidence indicates this Count was unwarranted and Middlefield's position was not substantially justified. There are, however, special circumstances rendering an award under Section 523(d) unjust. All but one of the loans in issue were business rather than consumer loans. The principal loans which were disputed were business loans. In addition, Count I was alleged and consequently defended in conjunction with six additional counts to which Section 523(d) is inapplicable. An award of costs and fees under these circumstances is inequitable.

Section 1927 of Title 28 provides for counsel's liability for excessive costs as follows:—

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

28 U.S.C. § 1927 (1988)

In addition, Bankruptcy Rule 9011 provides for imposition of sanctions against counsel and a represented party for filing pleadings unwarranted or interposed for an improper purpose. Ultimately Plaintiff's position herein was not sustained by the law or evidence. It does not, however, appear to be improper or for any improper purpose. Imposition of sanctions under Bankruptcy Rule 9011 is, therefore, inappropriate. Moreover, counsel's conduct was neither unreasonable nor vexatious within the meaning of Section 1927. Relief requested by counterclaim must, therefore, be denied.

## JUDGMENT

For reasons stated in the Memorandum of Opinion and Decision filed contemporaneously with this Judgment,

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Defendant is granted judgment on the complaint. His obligations to the Plaintiff are dischargeable debts pursuant to 11 U.S.C. § 523 and there is no basis for denial of discharge pursuant to 11 U.S.C. § 727.

IT IS FURTHER ORDERED that Plaintiff is granted judgment on the counterclaim of Defendant.