**In the Matter of Jon SCHUSTER, Debtor.**

**Rudy FRANTZ and Robert Frantz, Plaintiffs,**

v.

**Jon SCHUSTER, Defendant.**

Bankruptcy Case No. 92–01507–G. Adv. No. 92–0362.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Aug. 16, 1994.

Gerald L. Decker, St. Clair Shores, MI, for debtor/defendant.

Robert A. Yingst, Holly F. Underwood, Berrien Springs, MI, for plaintiffs.

Basil T. Simon, Detroit, MI.

## MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION TO LIFT STAY AND FINDING THE DEBT NON–DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(6)

RAY REYNOLDS GRAVES, Chief Judge.

This matter is before the Court on Plaintiffs' Motion to Lift Automatic Stay regarding the execution on a default judgment which was obtained in Berrien County Circuit Court on September 28, 1993. On November 25, 1992 this Court granted the Plaintiffs' Motion to Lift Stay to allow the state court proceedings to continue. Pending before this Court in anticipation of the resolution of the state court matter is the Plaintiffs' complaint to determine dischargeability pursuant to 11 U.S.C. § 523(a). This case presents the issue of whether a plaintiff-creditor, who obtains a state court default judgment, may preclude the debtor from contesting the default judgment in a subsequent bankruptcy proceeding to the extent to which

the liability created by the default is non-dischargeable under the Bankruptcy Code.

At this juncture, Plaintiffs request a lift of the stay of execution, which, if granted by the court would allow the Plaintiffs to attempt to collect the amount awarded in the default judgment. Defendant argues that any intention of this Court to rely on the state court proceeding in order to determine that this debt is non-dischargeable is inappropriate. The state court judgment was obtained as a result of a default by the debtor following the withdrawal of debtor's counsel. The debtor maintains that he was not properly notified of the entry of the default as required by MCR 2.603, A(2) or the request for the entry of default judgment as required by MCR 2.603(B) and did not have an opportunity to represent himself subsequent to the withdrawal of his counsel. The debtor argues that he has been denied due process in that he was not given the opportunity to cross examine the plaintiffs, did not have the opportunity to testify himself or have the matter decided before a jury. In short, the debtor's position is that he was not given the opportunity to defend himself with respect to the state court claims.

In this proceeding however, plaintiffs' claims are evidenced by the following: (1) judgment of sentence whereby the defendant/debtor was convicted of criminal sexual conduct pursuant to PACC 750.520 CIB; (2) police report; (3) several affidavits from plaintiffs' psychiatrist, plaintiff and investigating police officers; (4) state court judgment which found after testimony that the defendant/debtor's actions were done intentionally and wantonly.

### Facts

Defendant in this matter was charged and convicted of criminal sexual assault on April 10, 1991 in the 30th Judicial Circuit Court in Ingham County, Michigan (Ingham County Circuit Court No. 89–2506–NO–H). Upon conviction of the defendant/debtor, the plaintiffs/creditors filed a civil law suit in Berrien County Circuit Court in an effort to recover damages for defendant/debtor's alleged injuries to plaintiffs Robert and his father, Rudy

Frantz. Debtor Schuster who was superintendent of schools where plaintiff Frantz attended school, was also a family friend who took Robert Frantz, a minor, from his home for a weekend trip to Lansing, Michigan. Debtor drove Robert Frantz to the Harley Hotel in Lansing where he encouraged the 14 year old minor to disrobe and drink liquor in an effort to lower his inhibitions. Debtor/defendant continued many ploys and attempts to engage in sexual activity with Robert Frantz. The weekend culminated in the criminal sexual abuse of young Frantz by debtor Schuster.[1] Subsequent to his criminal conviction, the debtor filed for bankruptcy protection pursuant to chapter 7 of the bankruptcy code.

Young Frantz did not report this incident until sometime later, largely due to the fact that defendant Schuster threatened his mother's job and told him to keep it a secret. Schuster also told him that no one would believe him anyway because of Schuster's position in the community. Young Frantz believed this and it added to the torture of the situation. He understood that Mr. Schuster was a highly influential person and has testified that, because of fear, embarrassment and the thought that no one would believe him, he did not reveal the abuse until he was finally confronted by his sister concerning his changed behavior. Young Frantz was encouraged to come forward in this case sparked by the fact that others who had also been abused by Jon Schuster came forward.

Defendant Schuster exhibited a common scheme or plan devised in sexually abusing other similarly situated children, as confirmed by Detective Sgt. William Tucker of the Berrien Police Department. The evidence presented at trial clearly demonstrated that Schuster intentionally committed serious wrongs upon young boys and inflicted upon them deep and lasting emotional scars.

The Frantzes alleged and have now proven that Jon Schuster, acting in the capacity as a school superintendent for Berrien Springs Public Schools, abused his authority as superintendent of schools by removing young Frantz from his home for the specific pur-

1. Circuit Court file no. 89–2506–NO–H.

pose of obtaining sexual gratification. Schuster was held to be liable in the state court proceedings for all claims in plaintiff's complaint[2]. The uncontroverted facts show that Mr. Schuster did in fact under the guise of acting as a good friend and father figure, asked for and arranged with Ms. Frantz and her 14 year old son Robert for a guys getaway. Defendant Schuster did this with the specific purpose of causing both plaintiffs to believe that in his role as superintendent and as a kind and caring individual, he was trying to help Robert overcome his insecurities about his parents recent separation. In reality, however, Defendant Schuster's intentions were to deceive the Frantzes and to take indecent and immoral liberties with young Frantz.

Plaintiffs allege that the conduct of Mr. Schuster in this case is so clearly willful and wanton and in total disregard for the emotions of both plaintiffs that any reasonable person would find his conduct to be extremely outrageous. Moreover, plaintiffs strenuously argue that intentional and willful conduct is absolutely clear on all counts, and this Court should not relitigate these issues which have dragged on for over four years.

### Discussion

### Res Judicata/Collateral Estoppel

It is for the Bankruptcy Court to determine the dischargeability of the damage award entered against debtor and in favor of creditors. However, the principles of *res judicata* and collateral estoppel which are firmly rooted in the law are applicable to these proceedings.

The Supreme Court in *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980), stated:

> The federal courts have traditionally adhered to the related doctrine of *res judicata* and collateral estoppel. Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues which were or

could have been raised in that action. *Cromwell v. County of Sac*, 24 L.Ed. 195, 94 U.S. 351, 352 [(1876)].... Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Montana v. United States*, 440 U.S. 147, 59 L.Ed.2d 210; 99 S.Ct. 970 [(1979)]. As this court and other courts have often recognized, *res judicata* and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources and, by presenting inconsistent decisions, encourage reliance on adjudication, *Id.*, at 153, 154, 59 L.Ed.2d 210; 99 S.Ct. 970.

The doctrines of *res judicata* and collateral estoppel apply to state court rulings as well. See *Montana v. United States, supra; Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947).

### I.

This court has previously addressed the issue of what preclusive collateral estoppel effect attaches to a state court mediation award in *In re Zick*, 100 B.R. 867, 868 (E.D.Mich.1989). A similar analysis begins in the case at bar.

The *Zick* opinion explains that under the full faith and credit clause of Article IV, Section 1 of the Constitution of the United States and 28 U.S.C. § 1738, the federal courts are directed to refer to the law of the state in which the judgment was rendered when deciding what preclusive effect to give the earlier court's judgment with regard to claim and issue preclusion, *In re Zick, supra*, at 868, 869. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

After considering the preclusive effect of the earlier judgment under state law, the court must determine whether a federal statute expressly or impliedly creates an

**2.** Creditor's personal injury suit is brought under 42 U.S.C. § 1983 as well as fraud, assault and intentional infliction of emotional distress. These claims arise out of sexual abuse by debt-

or/defendant Schuster upon Robert Frantz, creditor/plaintiff. Robert Frantz was sexually abused by Jon Schuster on the weekend of April 24, 1985, when Robert was 14 years old.

exception to the application of 11 U.S.C. § 1783.

*In re Zick, supra,* at 869; *Marrese v. American Academy of Orthopedic Surgeons, supra,* 470 U.S. at 380–82, 105 S.Ct. at 1332. See also *In re Eadie,* 51 B.R. 890, 893 (Bankr.E.D.Mich.1985); *In re Manuel,* 76 B.R. 105 (Bankr.E.D.Mich.1987).

An initial inquiry therefore must address the criteria under Michigan law necessary in establishing collateral estoppel and then determine if this default judgment meets those criteria. In the case of *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981) the Sixth Circuit set forth the factors to apply when analyzing whether collateral estoppel is appropriate in dischargeability proceedings. The court stated the doctrine requires "that the precise issue in the later proceeding was raised in a prior proceeding; that the issue was actually litigated and that the determination was necessary to the outcome." *Spilman v. Harley, supra,* at 228. *See also Eadie, supra; In re Khullar,* 139 B.R. 428 (Bankr.E.D.Mich. 1992). In *Khullar,* this court held that based upon the doctrine of collateral estoppel that the debtor was precluded from relitigating the issue of conversion where the debtor either did not appear or testify in the state court proceeding. *Khullar,* at 430.

### State Court Proceeding

■ Plaintiffs brought a personal suit in state court pursuant to 42 U.S.C. § 1983 as well as fraud, assault, and intentional infliction of emotional distress as a result of Plaintiff Robert Frantz being sexually abused by Defendant Schuster. The judgment of the state court found defendant/debtor's actions to be intentional and wanton. In the current case, plaintiffs seek to have the debtor's debt determined as non-dischargeable premised upon 11 U.S.C. § 523(a)(6) for willful and malicious injury. 11 U.S.C. § 523(a) sets forth the court's power to except a debt from discharge based upon willful or malicious injury and simply states:

> for willful and malicious injury by the debtor to another entity or to the property of another entity.

The code does not provide a definition for willful and malicious, however, it is agreed that in order to have a debt excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) the creditor must establish that the debtor's act was both willful and malicious. *In re Nelson,* 35 B.R. 765 (Bankr.N.D.Ill.1983).

Malicious has consistently been defined as intentional or deliberate. The definition of willful originates in *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) where the Supreme Court held that personal malevolence was not required and that a willful act was one done intentionally and voluntarily.

A myriad of cases focus on wilfulness as interpreted by *Tinker* to hold that willfulness could be established upon a finding of a reckless disregard of duty. See also *Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1986). However the amendments of the 1978 bankruptcy code have overruled the need to find reckless disregard. The official commentary to the code states to the extent that *Tinker v. Colwell* held that a less strict standard is intended and to the extent that other cases have relied on *Tinker* to apply a reckless disregard standard, they are overruled. S.R. 95–989, 95th Congressional, Second Session (1978, U.S.Code Cong.Admin.News, 5787, 5963, 6320). This comment was confusing in that the term reckless disregard was assigned to both willful and malicious. However, the court in *In re Hodges,* 4 B.R. 513 (Bankr.W.D.Va.1980) held that the willful requirement was satisfied by a showing that the act committed was intentional and the malicious requirement was satisfied by a showing that the act was committed with an intent to harm the creditor, *Id.,* at 516. Several approaches emerged as a result of this quandary. Some courts have essentially disregarded the legislative commentary overruling *Tinker* since the legislative history is not conclusive. See *Credithrift of America Auvenshine,* 9 B.R. 772 (Bankr.W.D.Mich.1981). Certain other courts elected to acknowledge the legislative commentary overruling *Tinker* but reasoned that *Hodges'* intent to harm standard for malice was subject to two interpretations. Specific intent to harm establishes malice and acting in the face of bad knowledge also establishes malice. *Wisconsin Finance Corp. v. Ries,* 22 B.R. 343 (Bankr.

W.D.Wisc.1982). The predominant alternative however is to hold Congress by its legislative commentary and to overrule the application of the reckless standard to the willful requirement in holding that Congress did not intend to disturb the application of reckless disregard to the malice requirement. *United Bank of Southgate v. Nelson,* 35 B.R. 766, 774 (Bankr.N.D.Ill.1983).

■ The court in the Sixth Circuit however in *Perkins v. Scharffe* concluded in apparently reading willful and malicious together, that willful means deliberate or intentional. Willful under 11 U.S.C. § 523(a)(6) requires a deliberate or intentional act that necessarily leads to injury and not an act with intent to cause injury. The holding in *Perkins v. Scharffe,* 817 F.2d 392 (6th Cir.1987) certainly applies to the intentional and willful actions of the debtor in the case at bar. The fact that defendant/debtor was in a position of power over both Young Frantz and his mother and using this power to purposely and intentionally attempt to exercise control over Young Frantz was certainly an act in reckless disregard of his duty and such acts starkly compares to the lesser standard as outlined under *Perkins.* Accordingly, this court concludes that the precise issue in the later proceeding was raised in a prior proceeding. It therefore flows from this analysis that the determination [of the issue] was necessary to the outcome.

## II.

■ The second level of inquiry is whether the issue was actually litigated. We must apply Michigan law in determining whether the state court judgment was 'actually litigated.' *In re Keene,* 135 B.R. 162 (Bankr. S.D.Fla.1991).

> A question has not been actually litigated until put in issue by the pleadings submitted to the trier of fact for a determination and thereafter determined. *In re Eadie,* 51 B.R. 890 ([Bankr.] E.D.Mich.1985) *Braxton v. Litchalk,* 55 Mich.App. 708, 223 N.W.2d 316 (1974), *Sahn v. Estate of Brisson,* 43 Mich.App. 666, 224 [204] N.W.2d 692 (1992), *In re Khullar,* 139 B.R. 428 ([Bankr.] E.D.Mich.1992).

In determining whether the state court judgment was actually litigated, we are instructed by *Eadie* that the entry of a default judgment is equivalent to an admission by the defaulting party to all of the matters well plead. *Id.,* at 891. The *Eadie* court however contends that every default judgment is not to be taken as having been actually litigated. The Bankruptcy Court is mandated to look at the entire state court record including affidavits, depositions testimony, state court judgment, criminal conviction and the failure to appeal, in assessing whether the matter has been actually litigated. The court must also inquire as to whether the state trial court had competent testimony before it upon which to grant a default judgment. The *Eadie* court, based upon the testimony and exhibits presented, determined all of the issues posed by the pleadings were actually litigated. *Eadie,* at 894.

In the case *sub judice,* prior to entering a judgment of default, the trial court held a bench trial where the court received testimony and reviewed affidavits attesting to the course of events at the conclusion of the trial, the court found the defendant/debtor's actions to be willful and wanton in his abuse of young Frantz. Therefore, the matter was actually litigated in the state tribunal.

### Opportunity to be Heard

■ The defendant/debtor however arduously asserts that he was denied an opportunity to be heard as he did not appear at the bench trial. Moreover, debtor contends that his absence from the proceeding in state court bars the application of collateral estoppel in this proceeding. This court is not persuaded by defendant/debtor's argument. In assessing the validity of a default judgment it has already been determined that:

> A default judgment is just as conclusive an adjudication and as binding upon the parties of whatever is essential to support the judgment as one which has been rendered following an answer and costs.

*Braxton v. Litchalk,* 55 Mich.App. 708, 714, 223 N.W.2d 316 (1974).

■ In Michigan, it is clear that the doctrine of collateral estoppel applies where: (1) the same ultimate issues underlying the first action are involved in the second action, (2) the parties have had a full opportunity to

litigate the issues in the former action, and (3) where there is materiality of estoppel whereby both litigants are bound by the judgment rendered in the first suit.

This court is convinced that pursuant to Michigan law the default judgment should be granted preclusive effect. The debtor in this case received notice of the settlement conference which led to the default. Moreover, the debtor received notice of the bench trial scheduled for September 28, 1993, but failed to appear and never moved to set the judgment aside or attempted to appeal the default judgment.

In this case we are presented with the affidavit of Robert Frantz, who details the intentional actions that took place perpetrated by the debtor.[3] We are also presented with a judgment of sentence committing the defendant to the department of corrections whereby he was found guilty of a specific intent crime, coupled with a default judgment from Berrien County for the civil charges brought against him. We are left with no other alternative but to find that the debt is non-dischargeable. There is nothing in the law, fact or logic that causes this court to hold otherwise. Therefore the debt is determined to be non-dischargeable in accordance with 11 U.S.C. § 523(a)(6).

### Conclusion

The conduct of the defendant which has not been disputed as testified to by young Frantz involved offensive rubbing, touching, fondling and attempted penetration. Such conduct could be expected to produce a lifetime of emotional and psychological damage, humiliation, embarrassment and emotional distress.

The debtor must be held accountable for his heinous conduct. The state court has found the defendant/debtor to be criminally accountable. This court finds that the debt is non-dischargeable and therefore finds the debtor civilly responsible for his conduct.

**IT IS SO ORDERED.**

3. Exhibit 1.