In re Ronald J. KESSNICK, Debtor.

**BETHESDA HOSPITAL,**
**Plaintiff–Appellant,**

v.

**Ronald J. KESSNICK, Defendant–**
**Appellee.**

Civ. No. C–1–94–300.
No. 1–93–11212.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 27, 1994.

482

C. Edward Noe, Cincinnati, OH, for plaintiff-appellant.

John Rose, Cincinnati, OH, for defendant-appellee.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before this court upon plaintiff Bethesda Hospital's appeal from the December 9, 1993, judgment entered by J. Vincent Aug, United States Bankruptcy Court for the Southern District of Ohio, for defendant Ronald J. Kessnick. *See Bethesda Hospital v. Kessnick (In re Kessnick)*, Ch. 7 Case No. 93–11212, Adv. No. 85–1190, slip op. (S.D.Ohio Dec. 9, 1993).[1] This court has appellate jurisdiction over this matter, pursuant to 28 U.S.C. § 158(a).[2] Upon review of

---

**1.** This general citation refers to bankruptcy documents in this opinion which are not otherwise referred to by full-cite name.

**2.** Title 28 U.S.C. § 158(a) provides:
The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken

plaintiff-appellant's and defendant-appellee's briefs, as well as the bankruptcy court's certificate of appeal and documents attached thereto, this court affirms the bankruptcy court's decision.

## RELEVANT PROCEDURAL HISTORY AND FACTS

In June of 1990, defendant, Ronald J. Kessnick, admitted his daughter, Joanna, for medical treatment at Bethesda Hospital. Bankr.Trial, Nov. 2, 1993 (Bankr.Doc. No. 17) (hereinafter, Bankr.Trial) at 34. Upon her admittance, defendant signed an "assignment of benefits" form, authorizing his insurer, the Community Mutual Insurance Co. (hereinafter, insurance company), to pay the hospital for his daughter's medical treatment. *Id.* at Plaintiff's Exh. 3. Subsequent to defendant's daughter's hospitalization, defendant began to receive bills for his daughter's hospital care. *See Id.* at 19.

In December of 1990, defendant received a $5,725.00 benefits check from the insurance company for his daughter's hospital care. *Id.* at 39. Defendant used the funds to pay non-medical debts, including his mortgage. *Id.* at 40, 60. No monies from the benefits check were paid to the hospital. *Id.*

Subsequent to the hospital's discovering that the insurance company had sent defendant the benefits check, the hospital, initiated suit against defendant in Hamilton County Municipal Court, 92CV–40439. Bankr.Pretrial Statement of Plaintiff, Oct. 29, 1993 (Bankr.Doc. No. 9), at 2, ¶ 11; Bankr.Pretrial Statement of Defendant, Nov. 1, 1993 (Bankr.Doc. No. 10), at 2, ¶ 7. In February of 1993, the municipal court entered judgment for plaintiff in the amount of $6,175.00. *Id.* On April 4, 1993, defendant filed for Chapter 7 bankruptcy and the municipal court judgment, for hospital against defendant, was stayed. Bankr. Pretrial Statement of Plaintiff, at 2, ¶ 13; Bankr. Pretrial Statement of Defendant, at 2, ¶ 9.

On June 21, 1993, plaintiff filed a complaint praying that defendant's hospital debt, in the amount of the benefits check, not be discharged.[3] Bankr. Complaint to Determine Dischargeability of Debt, June 21, 1993 (Bankr.Doc. No. 1). A trial was conducted on the matter on November 2, 1993. Bankr. Trial at 1. At the conclusion of the trial, the bankruptcy court issued a conditional opinion. *Id.* at 62–64. In the opinion, the bankruptcy court stated that, while plaintiff hospital had presumably made out a case for non-dischargeability, such decision was subject to change, pending examination of the "explanation of benefits" form that had accompanied the errant benefits check. *See Id.*

On December 9, 1993, upon submission of the "explanation of benefits" form into evidence, the bankruptcy court entered amended judgment for the defendant. Bankr.Judgment Entry, Dec. 9, 1993 (Bankr.Doc. No. 13). In the judgment, the bankruptcy court found that the plaintiff did not meet its burden of proof, by the preponderance of the evidence, on non-dischargeability. *Id.* at 2. Rather, the bankruptcy court held that defendant's personal use of the benefits check was not a malicious injury done by the defendant to the plaintiff to necessitate non-dischargeability pursuant to 11 U.S.C. § 523(a)(6). *Id.* As such, the bankruptcy court discharged defendant's debt. *Id.* This court addresses the propriety of the bankruptcy court's discharge order.

## OPINION

### Standard of Review

This court may reverse a bankruptcy court's finding of fact only if it is found to be clearly erroneous. Fed.R.Bankr. 8013 (1984); *In re Arnold,* 908 F.2d 52, 55 (6th Cir.1990) (citing *Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490, 491 (6th Cir.1986)); *see also In re Eagle Picher Indus.,* 164 B.R. 265, 269 (S.D.Ohio 1994) (district court may set aside findings of fact by the bankruptcy court only if such findings are "clearly erroneous"). Legal conclusions by the bankruptcy court are, however, sub-

only to the district court from the judicial district in which the bankruptcy judge is serving.

3. This request for non-dischargeability was made in accordance with provisions of 11 U.S.C. § 523.

ject to *de novo* review. *In re Caldwell,* 851 F.2d 852, 857 (6th Cir.1988), *appeal after remand,* 895 F.2d 1123 (6th Cir.1990); *see also In re Eagle Picher,* 164 B.R. at 269 (district court must apply de novo standard to all conclusions of law drawn by the bankruptcy court).

### Applicable Statutory Provision

■ Pursuant to 11 U.S.C. § 523(a)(6), a debtor may not be discharged from a debt "for willful [sic] *and* malicious injury by the debtor to another entity or to the property of another entity."[4] (emphasis supplied). The plain language of the statute evinces that the injury must be both wilful *and* malicious to impel non-dischargeability. *See Id.* To prevail on a claim under 11 U.S.C. § 523(a)(6), the plaintiff must show, by the preponderance of the evidence, that the defendant's actions were malicious and wilful. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Adams,* 31 F.3d 389, 393 (6th Cir.1994) ("creditor must prove exceptions to dischargeability for individual debts under 11 U.S.C. § 523(a) ... by a preponderance of the evidence"); *DeMarco v. Ohio Decorative Prods.,* No. 92–2294, 1994 WL 59009, at *10-11, 1994 U.S.App. LEXIS 3848, at 32 (6th Cir. Feb. 25, 1994) (preponderance of the evidence standard governs in civil actions between private litigants unless particularly important individual interests or rights are at stake).

### Benefits Check Was Plaintiff Hospital's Property

■ At the outset, it should be noted that the bankruptcy court did not err in finding that plaintiff hospital had a possessory interest in the benefits check. Although the check was made out in defendant's name, defendant had previously assigned and transferred all rights in the check to plaintiff hospital. *See* Bankr.Trial at Plaintiff's Exh. 3.

4. Title 11 U.S.C. § 523(a)(6) specifically provides:
(a) A discharge under §§ 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
. . .

### Defendant Actions Were Wilful

■ The bankruptcy court found that defendant used the benefits check to take care of immediate major and pressing debts. Bankr.Trial at 60. "[H]e had major debts and ... was going to use that check to cover these debts as fast as possible...." *Id.* This court does not find these findings of fact to be clearly erroneous. Plaintiff, himself, testified he was behind on house, car, and utility payments at the time of receipt of the check. *Id.* at 40, 46. He acknowledged that he deposited the benefits check to his checking account. *Id.* Defendant also testified that he paid these non-medical debts with the benefits check. *Id.*

Nor does this court, upon *de novo* review, find the bankruptcy court's legal conclusion on wilfulness to be incorrect. "The word 'willful' [sic] means 'deliberate or intentional,' a deliberate and intentional act which necessarily leads to injury." *Perkins v. Scharffe,* 817 F.2d 392, 394 (6th Cir.1987) (quoting 3 Collier on Bankruptcy 523–129 (L.P. King, ed., 15th ed. 1993)), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987); *In re Schuster,* 171 B.R. 807, 811–12 (Bankr. E.D.Mich.1994). Applying the facts as found by the bankruptcy court, it is obvious that defendant deliberately and intentionally cashed the benefits check and applied the funds to non-medical debts. It is also clear that defendant's actions produced injury to plaintiff hospital. Instead of receiving a $5,725.00 payment, the hospital received nothing.

### Defendant's Actions Were Not Malicious
#### Bankruptcy Court's Findings of Fact Were Not Clearly Erroneous

■ The bankruptcy court had a much harder time making findings of fact on the issue of whether defendant was malicious in his personal use of the benefits check. In the end, several findings were made. *See* Bankr.Judgment Entry at 2; Bankr.Trial at 57–64. Chief among these findings was that

(6) for willful [sic] and malicious injury by the debtor to another entity or to the property of another entity.

the explanation of benefits, which accompanied the benefits check, did not prominently display the name of the patient, defendant's daughter. Bankr.Judgment Entry at 2. The bankruptcy court also resolved that the hospital's assignment form did not specifically state that defendant was to pay over to plaintiff any and all monies paid by the insurance company for his daughter's care.[5] *Id.* at 63. Finally, the bankruptcy court found that the hospital had made a gross error, subsequently corrected, in defendant daughter's hospital bill. Judgment Entry at 2.

■ A bankruptcy court's factual determinations "should not be disturbed by a district judge unless there is 'most cogent evidence of mistake or miscarriage of justice.'" *Slodov v. United States,* 552 F.2d 159, 162 (6th Cir.1977) (quoting *McDowell v. John Deere Indus. Equip. Co.,* 461 F.2d 48, 50 (6th Cir. 1972)), *rev'd on other grounds,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), *on remand,* 579 F.2d 400 (6th Cir.1978). In other words, a district court may not overturn a bankruptcy court's findings of fact unless there is a "definite and firm conviction that a mistake has been made." *In re Arnold,* 908 F.2d at 55 (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948)).

Upon careful review of the bankruptcy hearing transcripts and exhibits, this court cannot say the bankruptcy court's factual findings surrounding the maliciousness inquiry were clearly erroneous. This court finds that it was not a miscarriage of justice for the bankruptcy court to conclude that the explanation of benefits form did not prominently identify the benefits check as one paid for defendant daughter's medical care. In fact, if any name was prominently displayed, it was defendant's. *See* Bankr.Trial at Plaintiff's Exh. 3. Further, the bankruptcy court was not incorrect in concluding that the assignment of benefits form did not explicitly state that any check received by defendant for daughter's medical care should be directly paid over to the hospital. If anything, the

assignment of benefits form suggested that any monies paid by the insurance company would go directly to the plaintiff hospital, without involving defendant. Finally, the plaintiff hospital, itself, admitted it had made a gross billing error, subsequently corrected, to defendant daughter's medical bill. Bankr.Trial at 48.

### *Bankruptcy Court Did Not Err On Its Legal Determination*

This court, upon review *de novo,* also finds that the bankruptcy court did not err when it reasoned that plaintiff failed to meet its burden of proof, by the preponderance of the evidence, that defendant's actions and intentions were malicious, pursuant to 11 U.S.C. § 523(a)(6).

■ A malicious injury does not follow from every act of conversion; instead, "there may be a conversion which is innocent and technical, an unauthorized assumption of dominion without wilfulness or malice." *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *In re Mears,* No. 93–0015–B–C, 1993 U.S.Dist. LEXIS 14778, at 5 (S.D.Ala. Oct. 20, 1993) (conversion/malice generalization conflicts with "well-settled principle," to-wit, a mere conversion does not constitute willful [sic] and malicious conduct). The Sixth Circuit has held that an injury to an entity or property cannot be shown to be malicious unless it is demonstrated, by the preponderance of the evidence, that such injury was done without just cause or excuse. *See Perkins,* 817 F.2d at 394. As recently stated:

> "Malicious" is conduct in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm.

*In re Kassoff,* 146 B.R. 194, 199 (Bankr. N.D.Ohio 1992). Further, the term, "malicious" does not incorporate negligent or reckless conduct. *See Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986) ("mere reckless disregard for the truth or falsity ... is not a willful [sic] and malicious injury for

---

5. In line with this finding, the bankruptcy court found evidence that the hospital had had problems for years in receiving direct payments of

major medical benefits from the insurer, even where there had been an assignment of benefits. Bankr.Judgment Entry at 2.

purposes of § 523(a)(6)"); *see also, In re Kassoff,* 146 B.R. at 199.

The facts, as presented and found by the bankruptcy court, simply do not show that defendant's actions were, in the legal sense of the word, malicious.[6] First, plaintiff did not present any evidence that plaintiff knew his actions were at plaintiff hospital's peril. *See* Bankr.Trial, 57–58, 62–63. Such knowledge may be inferred from the debtor's experience of the area at issue, his activities to conceal, or certain admissions relating to the agreement between the parties. *See In re Aldrich,* 37 B.R. 860, 864 (Bankr.N.D.Ohio 1984).

In the case at hand, defendant was not experienced in the area of health insurance or insurance claim transactions. *Id.* at 57. Also established was that defendant did not take any active steps to conceal receipt of the benefits check. *See Id.* at 58. Further, the evidence showed that defendant neither fully read the explanation of benefits form, nor interpreted the assignment of benefits form in such a way to know that he was not permitted to cash the benefits check for personal use. *Id.* at 62–63. What is more, defendant presented testimony that he believed the benefits check was paid to him for medical insurance claims he had made on his own behalf, prior to his daughter's hospitalization. *Id.* at 62–63. Plaintiff, therefore, has failed to establish, by the preponderance of evidence, that defendant knew his cashing the benefits check was a direct harm to the hospital. *See Id.* at 41.

Second, the bankruptcy court found several facts intimating that defendant fairly believed that he had full rights to the benefits check. The bankruptcy court found that the explanation of benefits accompanying the benefits check did not prominently set forth that the check was for defendant's daughter's hospitalization. Bankr.Judgment Entry at 2; Bankr.Trial at 62–63. This, coupled with defendant's stated belief that he thought the check was for his own past medical claims, suggests that, even had defendant fully read and strictly interpreted the assignment of benefits agreement, he still had cause to believe that he could use the check for non-medical purposes, without infringing on plaintiff. What is more, there is even the question whether defendant had read and interpreted the assignment of benefits form to derive the understanding that he was required to turn over any benefits paid on his daughter's behalf to the plaintiff. At the time the defendant signed the assignment of benefits form, he was also required to fill-out a laundry list of other forms.[7] *Id.* at 34. Further, defendant testified that he thought an assignment of benefits would entirely remove him from any and all dealings between the hospital and the insurance company. Thus, defendant had cause to believe he would never have to worry about signing over any insurance check to the plaintiff.[8] *Id.* The hospital's gross error in calculating defendant daughter's bill, albeit subsequently corrected, did not help in this regard. *See* Bankr.Judgment Entry at 2. According to the bankruptcy court:

> [Defendant] had gotten an incorrect statement that there had been a $26,000.00 paid earlier. That being the case, he probably thought that bill was now paid in full [by the insurance company].

In sum, this court finds that the bankruptcy court was correct in holding that plaintiff

---

6. Whether or not the facts, as determined by the bankruptcy court, meet the threshold for a finding of malicious injury is seen to be a legal conclusion, subject to *de novo* review by this court.

7. Plaintiff acknowledged that defendant filled out these various hospital admission and other forms during a very stressful time, upon his daughter's admittance into the hospital. *Id.* at 19.

8. There was no indication that defendant was ever expressly instructed by hospital on what to do if he ever received a benefits check for his daughter's hospital care. *See Id.* at 37–38. In view of the chronic problem plaintiff had had in getting the insurance company to pay major medical policy benefits directly to the hospital, even where there was an assignment of benefits, it might have behooved plaintiff to have anticipated such and taken earlier action to explicitly direct defendant in the event such benefits check was received by defendant. *See* Bankr.Judgment Entry at 2; Bankr.Trial at 63. In economic terms, such preventive measures would have been much more efficient, especially considering the back-end legal fees and other transactional costs incurred by plaintiff.

hospital failed to show, by the preponderance of evidence, that defendant's injury to plaintiff was malicious.

This court, therefore, affirms the decision of the Bankruptcy court. The Defendant's debt to plaintiff should be discharged. IT IS SO ORDERED.